In re I.A. DURBIN, INC., Debtor.

**JEFFERSON NATIONAL BANK,**
Plaintiff/Appellee,

v.

**I.A. DURBIN, INC. and Betty Kail,**
Defendants/Appellants.

No. 85–6458–CIV.

United States District Court,
S.D. Florida,
Miami Division.

April 29, 1986.

Irving Wolff, Roma Theus, II, Holland & Knight, Miami, Fla., for defendant/appellant I.A. Durbin, Inc.

Marc P. Birnbaum, Zemel & Kaufman, Miami, Fla., for defendant/appellant Betty Kail.

Herbert Stettin, Lapidus, Stettin & Frankel, Paul Friedman, Stuzin & Camner, Miami, Fla., for plaintiff/appellee Jefferson Nat. Bank.

## MEMORANDUM OPINION

SPELLMAN, District Judge.

This matter is before the Court on appeal from an Order of the United States Bankruptcy Court of the Southern District of Florida, 49 B.R. 528.

## BACKGROUND

The plaintiff/appellee, Jefferson National Bank (hereinafter referred to as "Jefferson Bank") filed an action in state court, on July 11, 1984, to foreclose a mortgage on Betty Kail's home, seeking recovery upon a promissory note made by I.A. Durbin, Inc. and Betty Kail and for the replevin of model home furniture located in Kail's home. The defendant/appellant, I.A. Durbin, Inc., (hereinafter referred to as "Durbin") and the defendant/appellant, Betty Kail (hereinafter referred to as "Kail") had signed a promissory note on behalf of the Jefferson Bank. Kail had personally guaranteed the note with her personal residence as collateral. Durbin and Kail defaulted and the Jefferson Bank, in July 1984, sought replevin of the model furniture in the foreclosure action. The Broward County Circuit Court granted replevin on July 18, 1984.

On July 19, 1984 Durbin filed for bankruptcy under chapter 11 and on August 10, 1984 successfully petitioned for removal of Jefferson Bank's action to bankruptcy court. Subsequently, Durbin filed an answer and counterclaim against Jefferson Bank in bankruptcy court alleging violations of common law causes of action, including: trespass to personal and real property, conversion, interference with advantageous business and contractual relationships, and unlawful replevin. Kail then joined Durbin's answer and counterclaims. Both Durbin and Kail preserved their right

to jury trial in all of their pleadings. On February 6, 1985, Kail filed a notice of non-consent to the bankruptcy court's jurisdiction.

On February 20, 1985, Kail and Durbin's demand for a jury trial was denied by the bankruptcy court based on 28 U.S.C. § 1411. They are appealing this ruling. The bankruptcy court heard the merits of the case and held in favor of Jefferson Bank on May 28, 1985. That judgment is not on appeal although some of the bankruptcy court's findings relating to its determination of whether this action constitutes a core or related proceeding are pertinent.

### RELATED PROCEDURAL BACKGROUND

Kail and Durbin also filed separate actions in the United States District Court alleging violations of civil rights under 42 U.S.C. § 1983; requesting declaratory relief; and realleging the common law causes of action found in their bankruptcy court counterclaim. Durbin and Kail also petitioned for the withdrawal of the reference from bankruptcy court to consolidate the action in the district court. On February 18, 1985, the district court denied the motion to consolidate and withdraw the reference. On March 12, 1985, the district court, in an order clarifying its February 14th order, instructed the bankruptcy court to proceed to trial on the merits of Jefferson Bank's complaint. The district court said it would reserve ruling on the federal complaint until the bankruptcy court's determination on the merits were final. On May 3, 1985 all of the federal counts were dismissed.

Additionally, after the bankruptcy judge refused to grant a jury trial, Kail and Durbin petitioned the United States Court of Appeals for a writ of mandamus and prohibition. The petitioners sought an order compelling the bankruptcy judge to conduct a jury trial or, in the alternative, to order a reference of the adversary proceeding to the district court for a jury trial. Without a written opinion, the court of appeals denied the writ of mandamus and prohibition on March 21, 1985.

### ANALYSIS

#### I .

#### Determination of Core v. Related Proceedings

##### A. *Durbin's Cause of Action*

Under 28 U.S.C. § 157(b)(3), the bankruptcy judge must determine on his own motion, or the timely motion of a party, whether a proceeding is a core proceeding or otherwise related to a case under chapter 11. Such a determination is critical before a bankruptcy judge may proceed to determine the merits of a case. The bankruptcy court found Durbin's case to be a core proceeding.

If a case is a core proceeding, the bankruptcy court makes all final determinations of the merits under 28 U.S.C. § 157(b)(1). If a case is a related proceeding, then the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court for a final determination, unless the parties consent to the bankruptcy court's authority to make the final determinations. 28 U.S.C. § 157(c)(1, 2). *See Fleet v. U.S. Consumer Council, Inc.,* 53 B.R. 833 (Bankr.E.D.Pa.1985) (a bankruptcy court may hear noncore related matters and make final determinations with the consent of parties under 28 U.S.C. § 157(c) (2)).

Durbin questions the treatment of its case as a core proceeding. The bankruptcy code does not explicitly define core or related proceedings, but leaves the definitions for the courts to develop. However, the bankruptcy courts differ in their methods to determine whether a proceeding is core or related.

One line of cases relies on *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) to support one method of determining the type of proceeding. These cases state that *Marathon* mandates that in a case solely involving state created

rights (e.g.: all common law causes of action) a bankruptcy court is without jurisdiction under art. III to adjudicate the claims if the claims would exist independently of the bankruptcy proceeding. In other words, for a case to be considered a core proceeding, the case would not exist "but for" bankruptcy. *See In re Nanodata Computer Corp.*, 52 B.R. 334 (Bankr.W.D. N.Y.1985); *Zweygardt v. Colorado National Bank*, 52 B.R. 229 (Bankr.D.Colo. 1985); *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 46 B.R. 464 (D.Mass. 1985) (breach of warranty is noncore because it is a "right traditionally cognizable under art. III courts."); *Shaford Companies, Inc. v. Curr International Coffees*, 52 B.R. 832 (Bankr.D.N.H.1985); *Climate Control Engineers v. Southern Landmark, Inc.*, 51 B.R. 359 (Bankr.M.D.Fla. 1985).

This line of cases reasons that 28 U.S.C. § 1334 grants "exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11". They reason that 28 U.S.C. § 157 delineates the authority of the bankruptcy court to determine core and related proceedings and 28 U.S.C. § 157(b)(2) provides a non-exclusive list of proceedings which may be core. These courts stress, however, that a case does not become a core proceeding simply because it is within a 28 U.S.C. § 157(b)(2) technical description. *See Nanodata, supra* at 340–41; and *Illinois-California Express, Inc. v. Continental Illinois National Bank*, 50 B.R. 232, 237 (Bankr.D.Colo.1985). To be core it must also arise under chapter 11 or in a case arising under chapter 11. *See In re Seton-Scherr, Inc.*, 26 B.R. 563 (Bankr.N. D.Ohio 1983) (cash collateral proceedings are core matters arising under title 11) and *Best Pack Seafood v. Barnes*, 45 B.R. 194 (Bankr.D.Me.1984) (preferences and fraudulent conveyances are core proceedings arising under title 11).

Therefore, under the *Marathon* reasoning, even though Durbin filed a counterclaim against a creditor with a claim against the estate, since the counterclaim is not dependent upon the bankruptcy code

for its vitality, it is not a core proceeding. *See In Re Yagow*, 53 B.R. 737, 739 (Bankr. D.N.D.1985) and *Morse Electric Co. v. Logicon, Inc.*, 47 B.R. 234 (Bankr.N.D.Ind. 1985) (where the debtor did not direct the court to a bankruptcy provision in his counterclaim and the defendant had filed no claim against the estate, it was a purely state law claim, therefore it was not a core proceeding). *Cf.* 28 U.S.C. § 157(b)(2)(C) providing that a core proceeding includes "counterclaims by the estate against persons filing claims against the estate."

In the case at bar, Jefferson Bank filed a pre-bankruptcy petition claim against Durbin for foreclosure, a money judgment and replevin. Durbin filed a counterclaim, based solely on state common law actions after he filed a voluntary chapter 11. Under the reasoning of *Marathon*, some courts would find the entire case to be a related proceeding because it would still exist in state court wholly independent of the bankruptcy proceeding. These courts would permit the bankruptcy court to hear the case to final judgment only with the consent of the parties, otherwise the court would only be permitted to submit proposed findings of fact and conclusions of law to the district court. *See* 28 U.S.C. § 157(c)(1, 2). Other courts would take *Marathon's* reasoning a step further holding that neither the bankruptcy court nor the district court may hear the case because the necessary art. III jurisdiction to hear a purely state law cause of action is lacking and therefore the case should be remanded to a state court for a jury trial. *See Zweygardt, supra; In re American Energy v. Anderson*, 50 B.R. 175 (Bankr.D.N.D.1985); 130 Cong.Rec. 7489 *reprinted in* 1984 U.S. Code Cong. & Ad. News 576–606 [hereinafter cited as U.S.Code Cong.].

Conceptually, the *Marathon* analysis is appealing. However, a closer look at what *Marathon* held reveals problems with the analysis. A plurality of the Supreme Court held in *Marathon* that Congress' Bankruptcy Reform Act of 1978 involved an unconstitutional grant of power because it empowered article I bankruptcy courts to

hear controversies required by the constitution to be heard by article III courts. *See Marathon,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598. Partly in response to the *Marathon* holding, Congress enacted the 1984 amendments to the Bankruptcy Act. *See Nanodata Computer Corp.,* 52 B.R. at 339.

*Marathon* did not explicitly discuss the situation present in the instant case. Rather, the courts applying the *Marathon* analysis relied on language in *Marathon* that merely implies that a purely state law claim cannot be heard by an article III court under the constitution. *See Marathon,* 458 U.S. at 84, 102 S.Ct. at 2878. When the Supreme Court spoke about the state claims it did so in the context of showing how broad a jurisdictional grant Congress had given the bankruptcy courts in the 1978 Act. The Court did not say that Congress, if it narrowed the jurisdictional grant, could not authorize that core proceedings, which are also state law claims, could not be tried by a bankruptcy court. *See Marathon,* 458 U.S. at 84, 102 S.Ct. at 2878.

Congress was fully aware of the implications of the *Marathon* case when the 1984 amendments to the Bankruptcy Act were drafted. It is apparent that the provisions dealing with the bankruptcy court's adjudicatory powers were specifically enumerated to avoid any conflicts with *Marathon.*

Numerous bankruptcy cases reject the notion that *Marathon* restricts the bankruptcy court from hearing all claims based upon purely state law causes of action. These cases point to the plain language of the amended act and defer to Congress' legislative directives clearly indicated therein. They consider any case that falls within the 28 U.S.C. § 157(b)(2) list of core proceedings to be a core proceeding as contemplated by Congress. *See U.S.Code Cong., supra* at 579, 594. *Cf. Garcia v. United States,* 469 U.S. 70, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984) (rejecting floor comments as precedent for legislative intent, preferring committee reports); *Alexander v. Farmers State Bank,* 49 B.R.

733, 736 (Bankr.D.N.D.1985). At least one authority contends that the last sentence of 28 U.S.C. § 157(b)(3) explicitly rejects the *marathon* analysis by stating: "a determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law." *See Collier on Bankruptcy* § 3.01 at p. 3–34 (15th Ed.).

The courts not following the *Marathon* reasoning would find Durbin's counterclaim to be a core proceeding under 28 U.S.C. § 157(b)(2)(C) because it is a counterclaim against a claim filed against the estate. *See Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727 (Bankr.M.D.Ga.1985); *Mauldin v. Peoples Bank of Indianola,* 52 B.R. 838 (Bankr.N.D.Miss.1985) (court said in dicta that a 547(b)(2)(C) counterclaim might be a core proceeding although based on a purely state law cause of action). This court finds the reasoning of these courts, interpreting the statute on its face, more persuasive than the reasoning based on judicial inferences from *Marathon's* language.

■ Furthermore, Durbin explicitly admitted in its memorandum filed in the district court that its counterclaim is a core matter on the basis that it is a counterclaim against a claim filed against the estate. (However, in Durbin's Reply brief to this court, Durbin asserts that the counterclaim is a related proceeding based on the *Marathon* analysis.) Durbin also alleged the reason removal was appropriate was that the "state court proceedings involved matters which are persuasively and exclusively within the jurisdiction" of the bankruptcy court. Although the counterclaim was not explicitly based on a bankruptcy code provision, the effect of a removal to the bankruptcy court was to enable Durbin and Kail to obtain possession of the property that was replevied by Jefferson Bank.

Bankruptcy courts make determinations such as these on a daily basis and its determination should not be reversed unless clearly erroneous. *See* Bankr.Rule 8013. Therefore, based on the fact that Durbin previously admitted that its pro-

ceeding is core and that 28 U.S.C. § 157(b)(2) explicitly states that a counterclaim filed against a claim against the estate is a core proceeding, this court finds Durbin's case to be a core matter.

### B. Determination of Kail's Consent to the Jurisdiction of the Bankruptcy Court

■ Kail's case under either of the above analyses, cannot be considered a core proceeding. Her case does not fall within any of the 28 U.S.C. § 157 groups of core proceedings. In fact, all of the parties agree it is a related proceeding, but differ as to whether the bankruptcy court can make a final determination on the merits of Kail's counterclaim. The pivotal issue is whether Kail consented to bankruptcy jurisdiction for a final adjudication of her counterclaim.

Under 28 U.S.C. § 157(c)(1), when a non-debtor in a related proceeding does not consent to the bankruptcy court's jurisdiction, the court must submit proposed findings of fact and conclusions of law to the district court for a final order or judgment. Therefore, the question is: What constitutes consent? The courts are split on this issue.

Some courts agree with Jefferson Bank's contention that by Kail's joinder in Durbin's bankruptcy counterclaim, she impliedly consented to the jurisdiction of the court. Jefferson Bank further contends that Kail's notice of no consent was not timely filed when it was filed five months after she had joined in Durbin's counterclaim. See L. A. Clarke and Son, Inc. v. Bullock Construction, 51 B.R. 31 (Bankr.D.C. 1985) (consent by alleging jurisdiction in the complaint); Baldwin-United Corp. v. Thompson, 48 B.R. 49 (Bankr.S.D. Ohio 1985) (referring to the 14th edition of Collier on Bankruptcy the court said: "consent may be expressed, implied from a timely failure to object to the bankruptcy court's jurisdiction, or it may be implied from any act that indicates a willingness to have the bankruptcy court determine a claim or interest."); Energy Savings Center, Inc. v. Council, 54 B.R. 100 (Bankr. E.D.Pa.1985) (absence of timely objection to jurisdiction will be deemed a consent to jurisdiction).

However, there are cases that support the proposition that consent must be expressed in writing, not implied from the pleadings. See First Landmark Development Corp. v. City of Pinellas Park, 51 B.R. 25 (Bankr.M.D.Fla.1985) (the court in dicta said: "absent written consent, the bankruptcy court may only submit proposed findings of fact ..."); Mohawk, supra (consent cannot be implied by the assertion of affirmative defenses); Collier on Bankruptcy § 3.01, at 3–39 (15th edition 1985) ("157(c)(2) may contemplate the informed and actual consent of the parties, as opposed to consent implied from failure to object to jurisdiction.").

Kail waited until two weeks prior to the scheduled trial date and five months after she joined Durbin's action to file the nonconsent notice. For five months the parties assumed Kail had consented to the bankruptcy court's jurisdiction. She voluntarily joined Durbin's counterclaim, which was filed after Durbin became a chapter 11 debtor, without any indication that she did not consent to the court's jurisdiction. Based on such a factual background, it can be implied that Kail consented to bankruptcy jurisdiction. Therefore, the bankruptcy court was correct in its determination that Kail had consented to its jurisdiction. The Court finds the rational behind permitting consent by implication to be more sound than that which would hold the bank hostage to Kail's actions, yet at the same time allowing her to escape the practical effect of her outward consent. In other words, Kail's actions are binding and cannot be ignored despite the absence of written consent.

## II

### The Bankruptcy Court's Power to Conduct a Jury Trial Under 28 U.S.C. section 1411

#### A. Durbin's Right to Jury Trial

■ Even if the bankruptcy court is empowered to conduct a jury trial in this case,

Durbin is involved in a core proceeding where jury trials have traditionally not been permitted. The courts have treated the right to a jury trial in core proceedings differently from one jurisdiction to another. However, most courts adhere to the general rule that a core proceeding is a proceeding created by the bankruptcy code and since bankruptcy is equitable in nature, all core proceedings are also equitable. Under the 7th amendment, there is no right to a trial by jury in a court of equity, therefore, there is no right to trial by jury in core proceedings. *See In re O'Bannon,* 49 B.R. 763 (Bankr.M.D.La.1985); *In re Mauldin, supra; In re Best Pack Seafood, supra; In re American Energy, supra; Hauytin v. Grynberg,* 52 B.R. 657 (Bankr.D.Colo. 1985); *Chase and Sanborn Corp. v. Bank of Credit and Commerce International,* 54 B.R. 43 (Bankr.S.D.Fla.1985).

This reasoning is in accord with *Katchen v. Landy,* 382 U.S. 323, 336–337, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966) where the Supreme Court stated "[t]he Bankruptcy Act, passed pursuant to the power given to Congress by Art. I, § 8, of the Constitution to establish uniform laws on the subject of bankruptcy, converts the creditor's legal claims into an equitable claim...." The Court went on to hold that no jury trial is mandated under the 7th amendment in equitable actions and therefore one was not mandated in a summary action by a bankruptcy court.

There are some courts that hold the right to a jury trial depends on the nature of the issue to be tried rather than the character of the overall action. *See In re Energy Resources, supra.* These courts reason that if the nature of the issue underlying the equitable core proceeding is legal, then federal law, via the 7th amendment determines whether there is a right to a jury under the equitable/legal distinction. *See In re Rodgers, supra* (although the underlying cause of action was core and traditionally an equitable action (fraudulent conveyance) the party sought damages, a legal remedy, therefore the entire action was considered legal and a jury trial was permitted in bankruptcy court); and *Atlantic Energy, Inc. v. Pierce,* 52 B.R. 17 (Bankr.S. D.Fla.1985) (utilizing Bankr.Rule 9015 the court held that jury trials are permitted in core proceedings if the nature of the proceeding is equitable).

However, the majority of courts follow the *Katchen* reasoning and do not permit jury trial cases involving core matters. Therefore, since Durbin's counterclaim is a core matter, no jury trial is mandated. The bankruptcy court's decision, denying Durbin a trial by jury, is affirmed.

**B.** *Kail's Right to Jury Trial*

The courts are split on the issue of whether a bankruptcy court may conduct a jury trial. 28 U.S.C. § 1411(a) states: "... this chapter and title 11 do not effect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim."

Some courts say that 28 U.S.C. § 1411(a) only preserves the right to jury trial in bankruptcy to personal injury and wrongful death cases. Additionally, under 28 U.S.C. § 157(b)(5) personal injury and wrongful death cases must be tried by a jury in the district court. These courts compare § 1411(a) with its predecessor, 28 U.S.C. § 1480(a) which gave a much broader right to jury trials in bankruptcy court. By striking § 1480(a), Congress has left the "strong suggestion that the right to trial by jury" is limited to personal injury and wrongful death cases. *See In re American Energy, Inc.,* 50 B.R. 175, 180 (Bankr.D.N.D.1985) (court must abstain in related cases where the parties request a jury); *Collier, supra* at § 3.01, 365 (§ 1411 appears to be the only exception to the general rule that there are no jury trials in bankruptcy; unless a removed case is remanded, the party removing the case loses his right to a jury trial); U.S. Code Cong., *supra* at 579, 580 ("in this narrow range of cases the parties do not lose any right to a jury trial" (referring to personal injury and wrongful death cases)).

Other courts have held that § 1411(a) neither expressly prohibits nor permits jury trials by the bankruptcy court, therefore the bankruptcy courts continue to have the implied power to conduct them. One court stated that § 1411(a) and § 157(b)(5) merely prohibit the bankruptcy court from conducting jury trials in personal injury and wrongful death cases, but not in other type cases. *See In re Morse Elec. Co., supra.* However, the majority of courts have determined that since Bankr.Rule 9015, which governs the procedures for a jury trial in bankruptcy courts, has not been repealed and because there is no explicit prohibition of jury trials, the bankruptcy courts are allowed to conduct them. *See In re Rodgers,* 48 B.R. 683 (Bankr.E.D.Okla.1985); *Macon Prestressed, supra; Energy Resources Co. v. Rosen,* 49 B.R. 278 (Bankr. D.Mass.1985); *Zweygardt, supra* at 234.

■ Kail's case is a related proceeding. If Kail had not consented to the bankruptcy court's jurisdiction, even if a jury trial were permitted in bankruptcy court, it would be nothing more than an advisory opinion because the bankruptcy court is only empowered to give proposed findings of facts and conclusions of law to the district court for a final determination. Therefore, a jury trial in a related case with no jurisdictional consent should be conducted in the first instance in district or state court. *See Macon Prestressed, supra* at 730; *In re Smith-Douglass,* 43 B.R. 616 (Bankr.E.D.N.C.1984); *In re Morse, supra* at 238; and *Atlantic Energy, supra.*

■ However, when consent is given the question remains whether a bankruptcy court making a final determination in a related matter can conduct a jury trial. The case law, as previously indicated, seems to suggest that the courts try to preserve, whenever possible, the right to a jury trial. On the other hand, for administrative reasons, conducting jury trials is very time consuming and in this case would mean two separate trials. The bankruptcy court based its decision to not permit a jury trial on 28 U.S.C. § 1411(a) language which explicitly provides for jury trials only in personal injury and wrongful death cases. Even then the district court, not the bankruptcy court, would conduct the jury trial according to 28 U.S.C. § 157(b)(5). Nowhere else in the code is the bankruptcy court empowered to conduct a jury trial. From the plain language of the statute there appears to be no right to a jury trial in bankruptcy court. The bankruptcy court's decision is therefore affirmed denying Kail a jury trial.

## CONCLUSION

There are conflicting goals involved in this case. On the one hand is the right to a jury trial under the 7th amendment. Courts generally strive to grant a jury trial in every possible case. On the other hand, the bankruptcy code's underlying policy is the expedient disposition of all bankruptcy cases. The instant case is unlike the situation where the creditor, rather than the debtor, removes the case to bankruptcy court and the debtor desires a jury trial. In this case, both Kail and Durbin sought the bankruptcy court as the preferred forum for their litigation. They benefited from the powers within the bankruptcy code by securing possession of the replevied property while the case was pending. The loss of the right to a jury trial is admittedly serious, but on the specific facts of this case, the loss is warranted.

Durbin's case is a core proceeding under 28 U.S.C. § 157(b)(2)(C). Kail's case is a related proceeding under 28 U.S.C. § 157 (b)(2). Kail consented to the jurisdiction of the bankruptcy court by implication when she joined Durbin's counterclaims which were filed in the bankruptcy court and made no "timely objection" to jurisdiction at the time of filing or thereafter (the only objection to the court's jurisdiction being five months after she joined Durbin's counterclaims). Durbin and Kail have no right to a trial by jury in bankruptcy court pursuant to 28 U.S.C. § 1411(a). The bankruptcy court's decision should be affirmed.

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that the judgment of the Bankruptcy Court is affirmed in all respects as discussed in the foregoing paragraphs.