**In re Richard Alan CHADWICK Lenora Marie (Johnson) Chadwick f/d/b/a Produce Palace, Debtors.**

**Deirdre CAUGHLAN, Trustee in Bankruptcy for Richard Alan Chadwick and Lenora Marie (Johnson) Chadwick, formerly d/b/a Produce Palace, Plaintiff,**

v.

**FIRST SECURITY BANK OF HELENA, and Jerry Sullivan, Defendants.**

**Bankruptcy No. 284–00308.
Adv. No. 286/0062.**

United States Bankruptcy Court,
D. Montana.

Nov. 5, 1986.

---

Dunlap & Caughlan, Butte, trustee.

John H. Grant, Helena, Mont., for debtors.

P. Keith Keller, Helena, Mont., for defendants.

Gregory H. Warner, Great Falls, Mont., for plaintiff.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

Presently filed in Adversary Proceeding No. 286/0062 are memorandums of the Trustee/Plaintiff and Defendant dealing with abstention of the adversary cause to state court pursuant to Section 28 U.S.C. 1334(c)(1) and (2). The procedural morass of this cause leads the Court to conclude that abstention has neither been formally requested, and if it has been, the request has been waived, and consent to try this cause has been impliedly made by both parties. To explain this result, it is necessary to outline and discuss the procedural history of the bankruptcy proceeding. The file reflects the following:

08/16/84—Bankruptcy Petition filed.

09/28/84—First meeting of creditors held.

09/28/84—Proof of Claim of First Security Bank for secured amount of $328,042.00 filed.

10/15/84—Order granting relief from automatic stay against First Security Bank entered upon stipulation of the parties.

11/29/84—Bankruptcy case closed by Final Decree upon report of no assets by Trustee.

09/23/85—State court action filed by Debtors against First Security Bank (Cause ADV–85–927, First Judicial District, Lewis and Clark County).

05/29/86—Debtors filed Motion to Reopen bankruptcy case to claim as an asset the action against First Security Bank.

07/01/86—Court entered Order reopening file.

07/09/86—First Security Bank filed Motion For Hearing Contested Matter on grounds that state court complaint was in the nature of a counterclaim against Bank's Proof of Claim.

07/15/86—Debtors moved for Order seeking finding that state court action was abandoned; to appoint attorneys to act as special counsel for Debtors; to confirm and ratify filing of the state court action and "to permit the continuance of the First Security Bank case in the name of the Debtors".

08/05/86—Hearing on motions of Debtors and First Security Bank.

08/14/86—Trustee, on behalf of the estate, filed a 6 count complaint in adversary cause 286/0062 against the First Security Bank and its agent Jerry Sullivan alleging counts of pre-petition fraud and deceit, constructive fraud, breach of fidicuary duty, bad faith, tortious interference with prospective advantage and negligent misrepresentation.

08/26/86—Order entered finding the Debtors' claim against First Security Bank had not been abandoned by the Trustee and was an asset of the estate and allowed the Trustee to employ special counsel.

08/27/86—First Security Bank filed answer to Trustee's complaint in adversary cause 286/0062.

08/29/86—Bank filed a Memorandum Re: Abstention.

10/15/86—Trustee filed Reply Memorandum Re: Abstention.

No formal motion or abstention requesting relief under 28 U.S.C. 1334 has been filed by either party. The closest motion to such request is the Debtors' motion, but not joined in by the Trustee, of July 15, 1986, asking this Court to allow the state court action to proceed after a determination that such claim as an asset, had been abandoned by the Trustee. Obviously, the filing of the state court action in September, 1985, by the Debtors, met with the result that such action could not be prosecuted by the Debtors since it had never been abandoned as an asset. Relying on *Sierra Switchboard Co. v. Westinghouse Electric Corporation*, 789 F.2d 705 (9th Cir.1986), which specifically holds that abandonment of a Debtor's assets cannot be accomplished without notice and hearing, this Court held the claim against the Bank was an asset of the estate, which must be prosecuted by the Trustee as the only and real party in interest. Clearly, then, the end run the Debtors sought to attain by the filing of state court action was brought to a halt.

■ The question of this Court's jurisdiction to try the present adversary cause has, in my opinion, been waived. After the Debtors filed a motion to allow the state court proceeding to continue in the Debtors' name, and before this Court entered its Order declaring that the claim had not been abandoned, the Trustee filed the present adversary case in this Court, asking for damages which constitute assets of the Debtors' estate. Yet the Proof of Claim of the Bank is still outstanding and unsat-

isfied, so obviously any recovery against the Bank will have to ultimately affect that claim, either by way of set off or payment. The conduct of the Trustee is not seeking on her behalf any abstention, coupled with the conduct of the Bank in filing its answer requesting a decision in this adversary cause on the merits, without any affirmative defense attacking jurisdiction, constitute at a minimum implied waiver of lack of jurisdiction in this Court.

In *In Re Castlerock Properties*, 781 F.2d 159, 161–162 (9th Cir.1986), the Court held:

"Thus, the 'essence of the jurisdictional system' is the distinction between core and noncore matters. *Lesser v. A–Z Associates, Inc. (In Re Lion Capital Group)*, 46 B.R. 850, 852 (Bankr.S.D.N.Y.1985).

\* \* \* \* \* \*

Further, we are persuaded that a court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems. See *Mohawk*, 46 B.R. at 466; *Morse Electric* [Co., Inc. v. Logicon, Inc.], 47 B.R. [234] at 237–38 [ (Bankr.N.D.Ind.1985) ]. The apparent broad reading that can be given to Section 157(b)(2) should be tempered by the *Marathon* decision. [In re] *American Energy*, 50 B.R. [175] at 178 [ (Bankr.P.R.D.1985) ]. This circuit has interpreted *Marathon* as depriving the Bankruptcy Court of jurisdiction 'to make final determinations in matters that could have been brought in a district court or a state court'. [*Lucas v.*] *Thomas*, 765 F.2d [926] at 929 [ (9th Cir.1985) ]. However, if the district court can review *de novo*, giving no deference to findings of the bankruptcy judge, initial proceedings can be held before a non-Article III court. Id. cf. *Briney v. Burley, (In Re Burley)*, 738 F.2d 981, 986 (9th Cir.1984) (non-Article III Bankruptcy Appeals Panel constitutional where *de novo* review by court of appeals). Accordingly, we hold state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. Section 157(b)(2)(B)–(N) are related proceedings

under Section 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, Sections 157(b)(2)(A) and (O). To hold otherwise would allow the Bankruptcy Court to enter final judgments that this court has held unconstitutional. Since we find the case before us as a 'related proceeding', the district court was correct in ruling that the Bankruptcy Court had no jurisdiction to enter judgment. 28 U.S.C. Section 157(c)(1)."

The case against jurisdiction of this court to try the tort claim based on personal injury because of Section 157(b)(5) and the final phrase of 157(b)(1)(O) clearly states personal injury tort or wrongful death claims are not core proceedings. But in this case the actions of the Trustee are more in the nature of property damage rather than personal injury.

After *Marathon* decided the jurisdictional grant in the 1978 Bankruptcy Code was unconstitutional, Congress in response, passed the 1984 Amendments describing core proceedings in Section 157. The matter of jurisdiction dependent on core proceedings is ably discussed in *In Re I.A. Durbin, Inc.*, 62 B.R. 139, 141, 142–143, (S.D.Fla.1986) where District Judge Spellman held:

"One line of cases relied on *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) to support one method of determining the type of proceeding. These cases state that *Marathon* mandates that in a case solely involving state created rights (e.g. all common law causes of action) a bankruptcy court is without jurisdiction under Article III to adjudicate the claims if the claims would exist, independently of the bankruptcy proceeding. In other words, for a case to be considered a core proceeding, the case would not exist 'but for' bankruptcy. See *In Re Nanodata Computer Corp.*, 52 B.R. 334 (Bankr.W.D.N.Y. 1985); *Zweygardt v. Colorado National Bank*, 52 B.R. 229 (Bankr.D.Colo.1985); *Mohawk Industries Inc. v. Robinson Industries, Inc.*, 46 B.R. 464 (D.Mass.1985)

(breach of warranty is non-core because it is a 'right traditionally cognizable under Article III courts); *Shaford Companies Inc. v. Curr International Coffees*, 52 B.R. 832 (Bankr.D.N.H.1985); *Climate Control Engineers v. Southern Landmark, Inc.*, 51 B.R. 359 (Bankr.M. D.Fla.1985). * * * These courts stress, however, that a case does not become a core proceeding simply because it is within a 28 U.S.C. Section 157(b)(2) technical description. * * * To be core it must also arise under Chapter 11 or in a case arising under Chapter 11.

\* \. \* \* \* \* \*

Conceptually, the *Marathon* analysis is appealing. However, a closer look at what *Marathon* held reveals problems with the analysis. A plurality of the Supreme Court held in *Marathon* that Congress' Bankruptcy Reform Act of 1978 involved an unconstitutional grant of power because it empowered Article I Bankruptcy Courts to hear controversies required by the Constitution to be heard by Article III courts. See *Marathon*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598. Partly in response to the *Marathon* holding, Congress enacted the 1984 amendments to the Bankruptcy Act. See *Nanodata Computer Corp.*, 52 B.R. at 339.

*Marathon* did not explicitly discuss the situation present in the instant case. Rather, the courts applying the *Marathon* analysis relied on language in *Marathon* that merely implies that a purely state law claim cannot be heard by an Article III (sic) court under the constitution. See *Marathon*, 458 U.S. at 84, 102 S.Ct. at 2878. When the Supreme Court spoke about the state claims it did so in the context of showing how broad a jurisdictional grant Congress had given the Bankruptcy Courts in the 1978 Act. The Court did not say that Congress, if it narrowed the jurisdictional grant, would not authorize that core proceedings, which are also state law claims, could not be tried by a Bankruptcy Court. See

*Marathon,* 458 U.S. at 84, 102 S.Ct. at 2878.

Congress was fully aware of the implications of the *Marathon* case when the 1984 amendments to the Bankruptcy Act were drafted. It is apparent that the provisions dealing with the Bankruptcy Court's adjudicatory powers were specifically enumerated to avoid any conflicts with *Marathon.*

Numerous bankruptcy cases reject the notion that *Marathon* restricts the Bankruptcy Court from hearing all claims based upon purely state law causes of action. These cases point to the plain language of the amended act and defer to Congress' legislative directives clearly indicated therein. They consider any case that falls within the 28 U.S.C. Section 157(b)(2) list of core proceedings to be a core proceeding as contemplated by Congress. See U.S.Code Cong., supra at 579, 594. Cf. *Garcia v. United States,* 469 U.S. 70, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984) (rejecting floor comments as precedent for legislative intent, preferring committee reports); *Alexander v. Farmers State Bank,* 49 B.R. 733, 736 (Bankr.D.N.D.1985). At least one authority contends that the last sentence of 28 U.S.C. Section 157(b)(3) explicitly rejects the *Marathon* analysis by stating: 'a determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law'. See *Collier on Bankruptcy,* Section 3.01 at P. 3–34 (15th Ed.).

The courts not following the *Marathon* reasoning would find Durbin's counterclaim to be a core proceeding under 28 U.S.C. Section 157(b)(2)(C) because it is a counterclaim against a claim filed against the estate. See *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727 (Bankr.M.D.Ga.1985); *Mauldin v. Peoples Bank of Indianola,* 52 B.R. 838 (Bankr.N.D.Miss.1985) (court said in dicta that a 547(b)(2)(C) counterclaim might be a core proceeding although based on a purely state law cause of action). This court finds the reasoning of these courts, interpreting the statute on its face, more persuasive than the reasoning based on judicial inferences from *Marathon's* language."

The counterclaim in *Durbin* involved alleged violations of common law causes of action including trespass, conversion, tortious interference with business and contractual relationships and replevin.

Moreover, two recent United States Supreme Court cases which discuss *Marathon, Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) and *Commodity Futures Trading Commission v. Schor,* —— U.S. ——, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), lend support to the view expressed by Judge Spellman in *Durbin.* In *Thomas,* the court stated:

"[T]he court's holding in [*Northern Pipeline* ] establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellant review."

473 U.S. at ——, 105 S.Ct. at 3334–35, 87 L.Ed.2d at 422.

The *Thomas* decision rejects the plurality language in *Marathon* on the public rights/private rights analysis observing that "Congress, acting for a valid legislative purpose—may create a seemingly "private" right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for—resolution with "limited involvement by the Article III judiciary". Id., 473 U.S. at ——, 105 S.Ct. at 3340, 87 L.Ed.2d at 428. Again, in *Schor* (Brennan and Marshall dissenting) the court upheld a regulation which allowed the Commodity Futures Trading Commission (CFTC) to adjudicate counterclaims arising out of commodity transaction through a complaint for reparation, which, of necessity, involved common law contract rights. The *Schor* opinion explains that Article III serves to protect both personal and structural interests, so that the private litigant has a guarantee of an impartial and

independent federal adjudication, and the structural interests has an interest to afford an inseparable element of the constitutional system of checks and balances between the three powers of government. With regard to the structural concerns, the court seemingly expanded the limitations *Thomas* placed on *Marathon* by rejecting the contention that the state law nature of a claim has any "talismanic power".

"Although our precedents in this area do not admit of easy synthesis, they do establish that the resolution of claims such as *Schor's* cannot turn on conclusory reference to the language of Article III. See, e.g. *Thomas*, 473 U.S. at —— [105 S.Ct. at ——]. Rather, the unconstitutionality of a given congressional delegation of adjudicative functions to a non-Article III body must be assessed by reference to the purposes underlying the requirements of Article III. See, e.g. id. at [105 S.Ct. at ——]; *Northern Pipeline*, 458 U.S. at 64 [102 S.Ct. at 2867–68]. This inquiry, in turn, is guided by the principle that "practical attention to substance rather than doctrinary reliance on formal categories should inform application of Article III." *Thomas*, supra, 473 U.S. at ——, 105 S.Ct. at ——. See also *Crowell v. Benson*, 285 U.S. 22 at 53, 52 S.Ct. 285 at 293, 76 L.Ed. 598.

\* \* \* \* \* \*

Of course, the nature of the claim has significance in our Article III analysis quite apart from the method prescribed for its adjudication. The counterclaim asserted in this case is a 'private' right for which state law provides the rule of decision. It is therefore a claim of the kind assumed to be at the 'core' of matters reserved to Article III Courts. See, e.g. *Thomas*, 473 U.S. at —— [105 S.Ct. at ——]; *Northern Pipeline*, 458 U.S. at 70–71, and n. 25 [102 S.Ct. at 2871 and, n. 25]; id. at 90 [102 S.Ct. at 2881] (Rehnquist, J. concurring in judgment). Yet this conclusion does not end our inquiry; just as this Court has rejected any attempt to make determinative for Article III purposes the distinction between public rights and private rights, *Thomas*, supra, [473 U.S.] at [——, 105 S.Ct. at ——]. There is no reason inherent in separation of powers principles to accord the state law character of a claim talismanic power in Article III inquiries. See, e.g. *Northern Pipeline*, 458 U.S. at 68, N. 20 [102 S.Ct. at 2870 n. 20]; id., at 98 [102 S.Ct. at 2885] (White, J., dissenting).

\* \* \* \* \* \*

Accordingly, where private, common law rights are at stake, our examination of the congressional attempt to control the manner in which those rights are adjudicated has been searching. See, e.g. *Northern Pipeline*, 458 U.S. at 84 [102 S.Ct. at 2878]; id. at 90 [102 S.Ct. at 2881–82], (Rehnquist, J. concurring in judgment). In this case, however, '[l]ooking beyond form to the substance of what' Congress has done, we are persuaded that the congressional authorization of limited CFTC jurisdiction over a narrow class of common law claims as an incident to the CFTC's primary, and unchallenged adjudicative function does not create a substantial threat to the separation of powers. *Thomas*, supra at —— [105 S.Ct. at ——].

\* \* \* \* \* \*

In so doing, we have also been faithful to our Article III precedents, which counsel that bright lines cannot effectively be employed to yield broad principles applicable in all Article III inquiries. See e.g. *Thomas*, supra. Rather, due regard must be given in each case to the unique aspects of the congressional plan at issue and its practical consequences in light of the larger concerns that underlie Article III. We conclude that the limited jurisdiction that the CFTC asserts over state law claims as a necessary incident to the adjudication of federal claims willingly submitted by the parties for initial agency adjudication does not contravene separation of powers, principles or Article III."

—— U.S. at ——, —— – ——, ——, 106 S.Ct. at 3255–56, 3259–60, 3261.

If the structural concerns in *Marathon* are now not automatically implicated by the presence of state law common law actions, then the constraints of such non-core edict are merely incidental to an adjudication under a federal scheme to determine non-dischargeability in the bankruptcy forum. Certainly the limiting language in the plurality opinion in *Marathon* that there are only three exceptions to the absolute mandate of Article III: Territorial courts; courts martial, and courts that adjudicate disputes concerning public rights, has now been expanded in a constitutional sense.

In addition, *Schor* specifically held the right to trial before an Article III court could be waived, either expressly or impliedly.

"Our precedents also demonstrate, however, that Article III does not confer on litigants an absolute right to the plenary consideration of every nature of claim by an Article III Court. See, e.g., *Thomas*, supra, [473 U.S.] at —— [105 S.Ct. at ——]; *Crowell v. Benson*, supra [283 U.S. at 87, 52 S.Ct. at 306]. Moreover, as a personal right, Article III's guarantee of an impartial and independent federal adjudication is subject to waiver, just as are other personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried. See, e.g. *Boykin v. Alabama*, 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274] (1969) (waiver of criminal trial by guilty plea); *Duncan v. Louisiana*, 391 U.S. 145, 158 [88 S.Ct. 1444, 1452; 20 L.Ed.2d 491] (1960) (waiver of right to trial by jury in criminal case); Fed.Rule of Civ.Proc. 38(d) (waiver of right to trial by jury in civil cases). Indeed, the relevance of concepts of waiver to Article III challenges is demonstrated by our decision in *Northern Pipeline*, in which the absence of consent to an initial adjudication before a non-Article III tribunal was relied on as a significant factor in determining that Article III forbade such adjudication. See, e.g., 458 U.S. at 80, n. 31 [102 S.Ct. at 2876 n. 31]; id. at 91 [102 S.Ct. at 2881–82] (Rehnquist, J., concurring in judgment); id. at 95 [102 S.Ct. at 2884]

(White, J., dissenting). See also *Thomas*, supra, [473 U.S.] at —— [105 S.Ct. at ——]. Cf. *Kimberly v. Arms*, 129 U.S. 512 [9 S.Ct. 355, 32 L.Ed. 764] (1889); *Heckers v. Fowler*, 2 Wall. 123 [69 U.S. 123, 17 L.Ed. 759] (1865)." —— U.S. at —— – ——, 106 S.Ct. at 3256–57.

So I conclude the Trustee and the Defendants have waived any right to abstention or trial before a state or Article III court.

Finally, with the Proof of Claim of the Bank still on file, the action by the Trustee is certainly in the nature of a counterclaim against that claim. As such, a core matter is presented under Section 28 U.S.C. 157(c) (counterclaims by the estate against persons filing claims against the estate). See, *In Re Durbin*, supra, citing *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727, and *Mauldin v. Peoples Bank of Indianola*, 52 B.R. 838.

 The Trustee has further demanded a jury trial on all issues of the complaint. Opposition has been taken to such request by the Defendants by their answer (Fifth Affirmative Defense). A jury trial is proper in a non-core proceeding. *In Re Leird Church Furniture Mfg. Co.*, 61 B.R. 444 (Bankr.E.D.Ark.1986); see also *In Re Durbin*, supra, at 144–145. Likewise, a jury trial is not available to the parties in a core proceeding. Clearly, on authority of *Durbin*, this Plaintiff is entitled to jury trial.

IT IS ORDERED this case is set for trial before the Court with a jury for January 6, 1987.